**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AMBER HIRSCH, as administrator of the estate of decedent, MARCUS MAYS, and on behalf of decedent's next of kin, | ) | |
| Plaintiff, | ) | |
| vs. | ) | 19 CV 7398 |
| WILL COUNTY, Illinois, Will County Sheriff MIKE KELLEY, WILL COUNTY SHERIFF'S OFFICERS David REED, Frederick ABDULLAH, Derek COPPES, Edward HAYES Jr., Kevin VILLEGAS, Carmen DESADIER, Nathan LITTLE, and Charles KAVANAUGH, WILL COUNTY EMPLOYEE Erica QUENSEN-DIEZ, WELLPATH, LLC and WELLPATH, LLC EMPLOYEES Penelope JOHNSON, Cindy SMITH, Guadalupe ZUNIGA, Olivia SIMPRI-MENSAH, Young KIM, Kia GREEN, Amanda NORTH-SHEA, Carmina FELICIANO, Carmina SHAW, Corina SHAW, Deatrice BLACK, Molly WEIGEL, Donna PETRAUSKIS, Tiffany UTKE, Mohammed IBRAHIM, Patricia LOPARCO, Sheila CORRIGAN, and Jeffrey SAFFOLD, | ) | Judge DURKIN<br>Magistrate Judge CUMMINGS |
| Defendants. | ) | |

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff, AMBER HIRSCH, as administrator of the estate of decedent, MARCUS MAYS and on behalf of MAYS's next of kin, by and through her attorneys, the Law Office of Thomas P. Needham and The Hamilton Law Office, LLC, makes the following first amended complaint against Defendant WILL COUNTY ("Defendant COUNTY"), Defendant Sheriff MIKE KELLEY ("Defendant SHERIFF"), WILL COUNTY SHERIFF'S OFFICERS David REED, Frederick ABDULLAH, Derek COPPES, Edward HAYES Jr., Kevin VILLEGAS, Carmen DESADIER, Nathan LITTLE, and Charles KAVANAUGH ("Defendant OFFICERS"), WILL COUNTY

EMPLOYEE Erica QUENSEN-DIEZ ("Defendant QUENSEN-DIEZ"), Defendant WELLPATH, LLC ("Defendant WELLPATH"), and WELLPATH, LLC EMPLOYEES Penelope JOHNSON, Cindy SMITH, Guadalupe ZUNIGA, Olivia SIMPRI-MENSAH, Young KIM, Kia GREEN, Amanda NORTH-SHEA, Carmina FELICIANO, Carmina SHAW, Corina SHAW, Deatrice BLACK, Molly WEIGEL, Donna PETRAUSKIS, Tiffany UTKE, Mohammed IBRAHIM, Patricia LOPARCO, Sheila CORRIGAN, and Jeffrey SAFFOLD ("Defendant WELLPATH EMPLOYEES"):

## INTRODUCTION

Marcus Mays died of an epileptic seizure in the Will County jail on the morning of November 8, 2018. He was 30 years old and the father of an 8-year-old daughter. Mays was diagnosed with epilepsy several years before his death. He was being cared for by a neurologist who prescribed medicine to prevent seizures. When Mays was first admitted to the Will County jail approximately a week before his death, he told the jail staff that he had a history of grand mal seizures and that he took medication for this condition, and jail staff knew that he had suffered at least one seizure the week before. However, the Will County jail staff did nothing with this information. Mays was not given his medicine. As a result of this gross indifference to his medical needs, Marcus Mays had a seizure and died in his cell nine days after his arrival.

This lawsuit is brought by the estate of Marcus Mays against the Will County Sheriff and Wellpath, LLC, the private company that the jail employs to handle inmate health care. Those two entities are responsible for the tragic and preventable death of Marcus Mays. They both violated his civil rights under federal law and caused his wrongful death under Illinois law.

## JURISDICITON and VENUE

1. This is an action brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution to address the deprivation, under color of law, of Plaintiff's rights under the United States Constitution and Illinois common and statutory law.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. §1391(b). All of the parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred within this district.

**PARTIES**

4. Plaintiff CARLOS GILMORE is a citizen of the United States who resides in Romeoville, Illinois. Plaintiff is the grandfather Marcus Mays and the Administrator of Mays's estate, representing the interests of Mays's next of kin, his 8-year old daughter, A.H.

5. Marcus Mays was a citizen of the United States and a pre-trial detainee at the Will County jail at the time of his death.

6. Defendant COUNTY is a local government entity in the State of Illinois and has the responsibility of funding and oversight at the Will County jail.

7. Defendant SHERIFF is the elected Sheriff of Will County, whose office is responsible for the oversight of Will County jail. Defendant SHERIFF is sued in his official capacity.

8. At all times relevant to this case, Defendant OFFICERS are or were correctional officers, or other employees and/or agents of Defendant SHERIFF who were acting with the scope of their employment and under color of law.

9. At all times relevant to this case, Defendant QUENSEN-DIEZ, is or was an employee and/or agent of Defendant COUNTY who was acting within the scope of her employment and under color of law.

10. Defendant WELLPATH, is a corporation that does business in the Northern District of Illinois.

11. At all times that are relevant to this case, Defendant WELLPATH had a contract with Will County, Illinois, and the Will County Sheriff's Office to provide medical care to inmates at the Will County jail. Also at all relevant times, Defendant WELLPATH, through its employees and agents, was acting under color of law and in the scope of its employment.

12. Defendant WELLPATH EMPLOYEES were responsible for the day-to-day medical care of inmates at the Will County jail. This responsibility includes but is not limited to the assessment of need for medical care, writing reports on an inmate's admission at the jail, inquiring of the inmates about their health and any medicine they have been prescribed, making requests for follow-up medical care for inmates, and keeping the correctional staff informed of any medical problems an inmate has. At all times relevant to this case, Defendant WELLPATH EMPLOYEES, are or were employees and/or agents of Defendant WELLPATH who were acting with the scope of their employment and under color of law.

**FACTS**

13. In October 2018, Marcus Mays lived in Romeoville, Illinois, with his grandparents. He was 30 years old and had an 8-year-old daughter, A.H.

14. In October 2018, Mays suffered from epilepsy.

15. Mays had been diagnosed with this disease approximately three years earlier, in 2015.

16. Mays was being treated by a neurologist and had been prescribed medicine to help treat his epilepsy and prevent seizures.

17. On October 27 and 28, 2018, Mays was at the home he shared with his grandparents and was visiting with other family members.

18. After midnight on October 28, 2018, Romeoville police officers were dispatched to the Plaintiff's home.

19. The Romeoville police officers caused Mays to be transported to Presence St. Joseph Hospital in Joliet for a psychiatric evaluation.
20. The Romeoville police officers were informed that Mays took medication to help treat his epileptic seizures.
21. Sometime after Mays arrived at the hospital, the Joliet Police Department was summoned to the hospital.
22. The Joliet police officers who arrived at Presence St. Joseph Hospital decided to arrest Mays.
23. After the Joliet police officers arrested Mays, they took him from the hospital and eventually brought him to the Will County jail in Joliet.
24. At the Will County Jail, one or more Defendant OFFICERS and/or Defendant WELLPATH EMPLOYEES learned from Marcus Mays that he had a history of grand mal seizures and that he had a prescription for medication to treat it.
25. One or more Defendant WELLPATH EMPLOYEE recorded the fact that Mays had a history of grand mal seizures in the reports that were generated during the intake process.
26. Defendant QUENSEN-DIEZ recorded the fact that Mays had a history of grand mal seizures and had not been given his epilepsy medication while at the Jail during an evaluation she conducted of Mays on November 1, 2018.
27. Defendant QUENSEN-DIEZ did nothing to ensure that Mays received proper medical care despite learning that he suffered from epilepsy and had not been given medication on November 1, 2018.
28. Defendant OFFICERS, QUENSEN-DIEZ and WELLPATH EMPLOYEES interacted with Mays during the time that he was in custody at the Will County Jail.
29. Defendant OFFICERS, QUENSEN-DIEZ, and WELLPATH EMPLOYEES knew Mays had a history of seizures and was suffering from epilepsy.

30. Defendant OFFICERS and WELLPATH EMPLOYEES had access to Defendant WELLPATH's own records, which documented Mays's history of seizures and that Mays was suffering from epilepsy and therefore should have known of Mays's history of seizures and epilepsy diagnosis.

31. In spite of that knowledge and access to Defendant WELLPATH's records, Defendant OFFICERS, QUENSEN-DIEZ, and WELLPATH EMPLOYEES did nothing to ensure that Mays obtained proper medical care.

32. Defendants could have arranged for Mays to be seen by a doctor, but they did not.

33. Defendants could have taken the steps necessary to obtain the medicine that Mays had been prescribed to treat his epilepsy, but they did not.

34. Defendants did not make reasonable efforts to ensure that Mays was monitored or that his condition was followed up on after he was admitted as an inmate in the Will County jail.

35. Mays was not seen by a doctor while he was incarcerated at the Will County jail.

36. Mays was not given any medicine to treat his seizures while he was incarcerated at the Will County jail.

37. When an epileptic who is on anti-seizure medicine stops taking the medicine suddenly, there is an increased risk of the number and severity of seizures. It is widely known in the medical profession that if an epileptic is going to stop taking the medicine prescribed for him, the medicine's dosage should be gradually tapered.

38. On the morning of November 8, 2018, Marcus Mays had an epileptic seizure in his cell and died.

39. Defendants OFFICERS, QUENSEN-DIEZ, and WELLPATH EMPLOYEES failure to address Mays's serious health condition increased the risk that Mays would suffer a seizure like the one that killed him on November 8, 2018.

## COUNT I

(42 U.S.C. §1983, Due Process claim)

40. Each of the preceding paragraphs is incorporated as if fully restated here.

41. As more fully described above, Mays had a serious medical need: he was suffering from epilepsy.

42. As more fully described above, Defendants' actions or omissions with respect to Mays were objectively unreasonable and/or deliberately indifferent towards the serious medical needs of Mays and to the substantial risk of harm to him.

43. Defendants failed to take appropriate steps to treat, supervise, and/or protect Mays, which was objectively unreasonable and/or constituted deliberate indifference towards his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution.

44. As a result of the objectively unreasonable and/or deliberately indifferent way in which Defendants treated Marcus Mays, they directly and proximately caused him to suffer physical and emotional pain and suffering before he died, diminished his chances of survival and/or caused the loss of his life, and caused his estate to incur funeral and burial expenses

**WHEREFORE**, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate the Estate of Marcus Mays for May's damages, for punitive damages against the individual defendants, plus court costs and attorney's fees and any other relief the Court deems to be just and equitable.

**COUNT II**

(42 U.S.C. §1983, *Monell* claim – Defendant SHERIFF)

45. Each of the preceding paragraphs is incorporated as if fully restated here.

46. A sheriff in any county in Illinois, such as Defendant SHERIFF, is always the final policy-making authority over a county jail's operations.

47. As detailed above, Mays's constitutional rights were violated when Defendants were objectively unreasonable and/or deliberately indifferent towards his serious medical needs.

48. The violation of Mays's right to due process was caused in part by the customs, policies, and widespread practices of Defendant SHERIFF, which result in the failure to provide adequate medical care to the inmates in the Will County jail.

49. These widespread or "de facto" policies include: (1) fostering an atmosphere where correctional officers and medical staff are permitted to disregard inmates who complain that they are sick; (2) failing to ensure that supervisors at the jail review the intake records for newly admitted inmates to determine if any are in need of prompt medical attention; (3) failure to supervise and monitor the work being done by Defendant OFFICERS who are working at the jail to make sure that inmates with serious health issues are being cared for; (4) failure to provide adequate training to correctional officers so that they can recognize inmates who are struggling with health problems so that they can be promptly addressed; (5) failure to ensure that there is a prompt response to all inmate requests for medical attention.

50. Defendant COUNTY and Defendant SHERIFF have long been aware that failing to provide adequate and timely treatment to detainees experiencing serious and life threatening medical needs is unconstitutional.

51. As a direct and proximate result of these acts and omissions, Mays experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

**WHEREFORE**, Plaintiff prays for judgment against Defendant COUNTY and Defendant SHERIFF in a fair and just amount sufficient to compensate the Estate of Marcus Mays for Mays's damages, plus equitable relief, plus court costs and attorney's fees and any other relief the Court deems to be just and equitable.

## COUNT III

(42 U.S.C. §1983, *Monell* policy claim – Defendant WELLPATH)

52. Each of the preceding paragraphs is incorporated as if fully restated here.

53. Defendant WELLPATH has assumed responsibility, by virtue of the contract it has with Will County and the public funds it is paid by Will County, with providing medical care to all inmates in the Will County jail.

54. Defendant WELLPATH was responsible for the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution requires.

55. As detailed above, Marcus Mays's right to due process was violated when Defendant WELLPATH EMPLOYEES were objectively unreasonable and/or deliberately indifferent towards his serious medical needs.

56. The violation of Mays's right to due process was caused in part by the customs, policies, and widespread practices of Defendant WELLPATH, which result in the failure to provide adequate medical care to the inmates who rely on the company for care.

57. These widespread or "de facto" policies include: (1) failure to establish rules and practices to make sure that intake admission information is promptly reviewed by a medical professional so that those inmates who need prompt care are helped; (2) failure to establish a system for Defendant WELLPATH EMPLOYEES to contact the doctors who have been treating an inmate prior to incarceration so that care can be continued and coordinated; (3) failure to establish a system whereby Defendant WELLPATH EMPLOYEES contacts the family members of inmates who have serious medical issues to verify the medical care an inmate has been receiving prior to incarceration; (4) failure to ensure that inmate requests for medical attention are reviewed and acted upon in a prompt manner; (5) failure to review the information in the possession of law enforcement officials about the circumstances under which an inmate was arrested, to determine if the inmate has a serious health issue.

58. Defendant WELLPATH has long been aware that failing to provide adequate and timely treatment to detainees experiencing serious and life threatening medical needs is unconstitutional.

59. As a direct and proximate result of these acts and omissions, Mays experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

**WHEREFORE**, Plaintiff prays for judgment against Defendant WELLPATH in a fair and just amount sufficient to compensate the Estate of Marcus Mays for May's damages, plus equitable relief, plus court costs and attorney's fees and any other relief the Court deems to be just and equitable.

**COUNT IV**

(42 U.S.C. §12101, et seq., Americans With Disabilities Act: Will County )

60. Each of the preceding paragraphs is re-alleged as if fully restated here.

61. Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to Defendants WILL COUNTY and KELLEY.

62. The Will County Jail is a facility, and its operation comprises a program and service for Title II purposes.

63. Mays had epilepsy, a medical disability under the ADA, throughout the time he was in the Defendants' custody and care.

64. Defendants failed to reasonable accommodate Mays's medical disability and to modify their facilities, operations, services, accommodations and programs to reasonable accommodate Mays's disability, in violation of Title II of the ADA.

65. Defendants' violations of the ADA were the proximate cause of Mays's injuries, damages and death and the resulting damage to his estate.

66. Plaintiff is entitled to recover, as the representative of Mays's estate, for those damages sustained as described in this Complaint as a result of Defendants' violations of the ADA which caused his death.

**WHEREFORE**, Plaintiff prays for judgment against Defendants COUNTY and KELLEY in a fair and just amount sufficient to compensate the Estate of Marcus Mays for May's damages, punitive damages, plus court costs and attorney's fees and any other relief the Court deems to be just and equitable.

**COUNT V**

(42 U.S.C. §12101, et seq., Americans With Disabilities Act: Wellpath )

67. Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to Defendant WELLPATH.

68. The Will County Jail is a facility, and its operation comprises a program and service, for Title II purposes. WELLPATH has contracted to provide services for a portion of the operation of the jail facility.

69. Mays had epilepsy, a medical disability under the ADA, throughout the time he was in the Defendants' custody and care.

70. Defendant WELLPATH failed and refused to reasonable accommodate Mays's medical disability and to modify their jail facilities, operations, services, accommodations and programs to reasonable accommodate Mays's disability, in violation of Title II of the ADA.

71. Defendant's failures cost Mays his life, and the violations of the ADA are the proximate cause of Mays's death and the resulting damage to his estate.

72. Plaintiff is entitled to recover, as the representative of Mays's estate, for those damages sustained as described in this Complaint as a result of Defendants' violations of the ADA which caused his death.

**WHEREFORE**, Plaintiff prays for judgment against Defendant WELLPATH in a fair and just amount sufficient to compensate the Estate of Marcus Mays for May's damages, punitive damages, plus court costs and attorney's fees and any other relief the Court deems to be just and equitable.

**COUNT VI**
(740 ILCS 180/1 *et seq*., Illinois Wrongful Death)

73. Each of the preceding paragraphs is incorporated as if fully restated here.
74. As more fully described above, Defendants owed Mays the duty to refrain from willful and wanton acts or omissions that could cause him suffering or death.
75. As more fully described above, Defendants breached their duty of care to Mays by willfully and wantonly committing one, more, or all of the following acts or omissions: ignoring the serious medical needs of Mays; failing to bring Mays's condition to the attention of medical personnel so that Mays could be properly treated; refusing Mays's requests for medical attention; failing to provide timely access to medical treatment for a serious condition of which they were aware; failing to monitor Mays for the foreseeable risk of an epileptic seizure; and/or otherwise acting willfully and wantonly towards Mays, in disregard for his medical needs.
76. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of Defendants, Marcus Mays died on November 8, 2018.
77. He was survived by a daughter, A.H., who is 8 years old and who is his next of kin under Illinois law.
78. Defendant COUNTY, Defendant SHERIFF, and Defendant WELLPATH are sued in this count of the complaint under the doctrine of *respondeat superior*; therefore those government entities are responsible for their employees' acts or omissions, which were performed while they were acting within the scope of their employment.

79. As a result of the wrongful death of Marcus Mays, his daughter has suffered and will continue to suffer profound grief as well as the loss of support, society and comfort in the future.

**WHEREFORE,** Plaintiff prays for a judgment against Defendants, jointly and severally, in a fair and just amount to compensate Mays's daughter for the damages she has suffered due to the loss of her father Marcus Mays, and such other relief as this Court deems just and equitable.

**COUNT VII**

(Illinois Survival Claim – Willful and Wanton Claim)

80. Each of the preceding paragraphs is incorporated as if fully re-stated here.

81. As more fully described above, Defendant OFFICERS and Defendant WELLPATH EMPLOYEES owed Mays the duty to refrain from willful and wanton acts or omissions that could cause Mays harm.

82. As more fully described above, Defendant OFFICERS and Defendant WELLPATH EMPLOYEES breached their duty of care by willfully and wantonly committing one, more, or all of the following acts or omissions: ignoring Mays's serious medical needs; failing to bring Mays's condition to the attention of medical personnel so that Mays could be properly treated; refusing Mays's requests for medical attention; failing to provide timely access to medical treatment for a serious condition of which they were aware; failing to monitor Mays for the foreseeable risk of an epileptic seizure; and/or otherwise acting willfully and wantonly toward Mays, in total disregard for his medical needs and safety.

83. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of Defendant OFFICERS and Defendant WELLPATH EMPLOYEES, Mays suffered serious emotional and physical pain and suffering prior to his death on November 8, 2018.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants, jointly and severally, in a fair and just amount sufficient to compensate Decedent's estate for the physical and emotional harm Mays suffered prior to his death, and such other relief as this Court deems just and equitable.

**COUNT VIII**
(Illinois Survival Claim, Intentional Infliction of Emotional Distress)

84. Each of the foregoing paragraphs is incorporated as if fully restated here.
85. In October 2018, May was suffering from epilepsy.
86. Defendants knew that Mays needed medical care, and through their willful and wanton acts or omissions, they failed to take reasonable action to summon medical care for him.
87. Defendants' willful or wanton disregard of Mays' severe physical and emotional distress constitutes extreme and outrageous conduct.
88. Defendants knew their failure to help Mays was likely to, and did, cause Mays to suffer severe emotional distress, which he did suffer before he died.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, in a fair and just amount sufficient to compensate Mays's estate for the injuries he has suffered, as well as such other relief that is just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

AMBER HIRSCH, Plaintiff and
Administrator for the Estate of Marcus Mays

By: /s Thomas P. Needham
Attorney for Plaintiff

Law Office of Thomas P. Needham
53 W. Jackson Blvd., Suite 452
Chicago, IL 60604
(312) 726-3171
tpn@needhamlaw.com

By: /s Torreya L. Hamilton
Attorney for Plaintiff

The HAMILTON LAW OFFICE, LLC
53 W. Jackson Blvd., Suite 452
Chicago, IL 60604
312.726.3173
tlh@thehamiltonlawoffice.com