**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMBER HIRSCH, as administrator of | ) | |
| the estate of decedent, MARCUS MAYS, | ) | |
| and on behalf of decedent's next of kin, | ) | |
| | ) | Case No. 19-CV-7398 |
| Plaintiff, | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| WILL COUNTY, Illinois, Will County | ) | Magistrate Jeffrey I. Cummings |
| Sheriff Mike Kelley, WILL COUNTY | ) | |
| SHERIFF'S OFFICERS DAVID REED, | ) | *Jury Trial Requested* |
| FREDERICK ABDULLAH, DEREK COPPES, | ) | |
| EDWARD HAYES, JR., KEVIN VILLEGAS, | ) | |
| CARMEN DESADIER, NATHAN LITTLE, | ) | |
| and CHARLES KAVANAUGH, WILL COUNTY | ) | |
| EMPLOYEE ERICA QUENSEN-DIEZ, | ) | |
| WELLPATH, LLC, and WELLPATH, LLC | ) | |
| EMPLOYEES PENELOPE JOHNSON, CINDY | ) | |
| SMITH, GUADALUPE ZUNIGA, OLIVIA | ) | |
| SIMPRI-MENSAH, YOUNG KIM, KIA GREEN, | ) | |
| AMANDA NORTH-SHEA, CARMINA | ) | |
| FELICIANO, CARMINA SHAW, CORINA | ) | |
| SHAW, DEATRICE BLACK, MOLLY WEIGEL, | ) | |
| DONNA PETRAUSKIS, TIFFANY UTKE, | ) | |
| MOHAMMED IBRAHIM, PATRICIA LOPARCO, | ) | |
| SHEILA CORRIGAN, and JEFFREY SAFFOLD, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO FIRST AMENDED COMPLAINT BY WILL COUNTY, MIKE KELLEY,
FREDERICK ABDULLAH, DEREK COPPES, EDWARD HAYES, JR., KEVIN
VILLEGAS, CARMEN DESADIER, NATHAN LITTLE, and CHARLES KAVANAUGH**

Defendants Will County, Illinois; Mike Kelley, in his official capacity as Sheriff of Will

County; Frederick Abdullah, Derek Coppes, Edward Hayes, Jr., Kevin Villegas, Carmen

Desadier, Nathan Little, and Charles Kavanaugh (hereafter collectively, "County Defendants"), by

and through their attorneys, jointly submit the following answer and affirmative defenses to

plaintiff's first amended complaint (Doc. # 65):

# INTRODUCTION

Marcus Mays died of an epileptic seizure in the Will County jail on the morning of November 8, 2018. He was 30 years old and the father of an 8-year-old daughter. Mays was diagnosed with epilepsy several years before his death. He was being cared for by a neurologist who prescribed medicine to prevent seizures. When Mays was first admitted to the Will County jail approximately a week before his death, he told the jail staff that he had a history of grand mal seizures and that he took medication for this condition, and jail staff knew that he had suffered at least one seizure the week before. However, the Will County jail staff did nothing with this information. Mays was not given his medicine. As a result of this gross indifference to his medical needs, Marcus Mays had a seizure and died in his cell nine days after his arrival.

This lawsuit is brought by the estate of Marcus Mays against the Will County Sheriff and Wellpath, LLC, the private company that the jail employs to handle inmate health care. Those two entities are responsible for the tragic and preventable death of Marcus Mays. They both violated his civil rights under federal law and caused his wrongful death under Illinois law.

**ANSWER:** **The County Defendants admit that Marcus Mays, who was about 30 years old, died in the Will County Jail on November 8, 2018. The County Defendants admit this lawsuit is brought by the estate of Marcus Mays against the Will County Sheriff and Wellpath, LLC, the private company that the jail contracts with to handle inmate health care. The County Defendants deny that when Mays was first admitted to the Will County Jail approximately a week before his death, he told any of them that he had a history of grand mal seizures or that Mays told them he took medication for this condition. The County Defendants deny that they knew that Mays had suffered at least one seizure the week before. The County Defendants deny that they were indifferent to Mays' medical needs. The County Defendants deny that they are responsible for the death of Marcus Mays. The County Defendants deny that they violated Mays' civil rights under federal law or caused his wrongful death under Illinois law. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in the "introduction."**

# JURISDICITON [sic] and VENUE

1.      This is an action brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment to

        the United States Constitution to address the deprivation, under color of law, of Plaintiff's

        rights under the United States Constitution and Illinois common and statutory law.

**ANSWER:    The County Defendants admit the allegations in paragraph 1 but deny that they deprived Plaintiff any constitutional, common law, or statutory rights, and also deny any wrongdoing or liability.**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. §1331, 1343, and 1367.

**ANSWER:    The County Defendants admit that this Court has jurisdiction over this case.**

3.      Venue is proper under 28 U.S.C. §1391(b). All of the parties reside in this judicial district

        and the events pertaining to the claims made in this complaint occurred within this district.

**ANSWER:    The County Defendants admit that venue is proper.**

# PARTIES

4.      Plaintiff CARLOS GILMORE   [sic] is a citizen of the United States who resides in

        Romeoville, Illinois. Plaintiff is the grandfather Marcus Mays and the Administrator of

        Mays's estate, representing the interests of Mays's next of kin, his 8-year old daughter,

        A.H.

**ANSWER:    The County Defendants deny that Carlos Gilmore is the plaintiff in this case or the administrator of Mays's estate. The County Defendants admit Amber Hirsch, in her capacity as administrator of Mays's estate, is the plaintiff in this case.**

5.      Marcus Mays was a citizen of the United States and a pre-trial detainee at the Will County

        jail at the time of his death.

**ANSWER:    The County Defendants admit that Marcus Mays was a pre-trial detainee at the Will County Jail at the time of his death. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 5.**

6.     Defendant COUNTY is a local government entity in the State of Illinois and has the

responsibility of funding and oversight at the Will County jail.

**ANSWER:     The County Defendants admit that the County is a local governmental entity in Illinois and has the responsibility of funding the operations of the Will County Jail and has some oversight over the Jail's operations. The County Defendants deny the remaining allegations in paragraph 6.**

7.     Defendant SHERIFF is the elected Sheriff of Will County, whose office is responsible for

the oversight of Will County jail. Defendant SHERIFF is sued in his official capacity.

**ANSWER:     Admit.**

8.     At all times relevant to this case, Defendant OFFICERS are or were correctional officers,

or other employees and/or agents of Defendant SHERIFF who were acting with the scope

of their employment and under color of law.

**ANSWER:     Admit.**

9.     At all times relevant to this case, Defendant QUENSEN-DIEZ, is or was an employee

and/or agent of Defendant COUNTY who was acting within the scope of her employment

and under color of law.

**ANSWER:     Admit that Defendant Quensen-Diez was an employee of the Will County Health Department at all times relevant to this case who acted within the scope of her employment and under color of law.**

10.     Defendant WELLPATH, is a corporation that does business in the Northern District of

Illinois.

**ANSWER:     Admit, upon information and belief.**

11.     At all times that are relevant to this case, Defendant WELLPATH had a contract with Will

County, Illinois, and the Will County Sheriff's Office to provide medical care to inmates at

the Will County jail. Also at all relevant times, Defendant WELLPATH, through its

employees and agents, was acting under color of law and in the scope of its employment.

**ANSWER:** The County Defendants admit that at all times relevant to this case, Defendant Wellpath (or its predecessor corporation, CCS) had a contract with Will County and the Will County Sheriff's Office, to provide medical care to inmates at the Will County Jail. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 11.

12.    Defendant WELLPATH EMPLOYEES were responsible for the day-to-day medical care of inmates at the Will County jail. This responsibility includes but is not limited to the assessment of need for medical care, writing reports on an inmate's admission at the jail, inquiring of the inmates about their health and any medicine they have been prescribed, making requests for follow-up medical care for inmates, and keeping the correctional staff informed of any medical problems an inmate has. At all times relevant to this case, Defendant WELLPATH EMPLOYEES, are or were employees and/or agents of Defendant WELLPATH who were acting with the scope of their employment and under color of law.

**ANSWER:** The County Defendants admit that Defendant Wellpath Employees were generally responsible for the day-to-day medical care of inmates at the Will County Jail under the terms of the contract between Wellpath and the County and Sheriff. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations as to the specific roles of or responsibilities assigned to specific Defendant Wellpath employees, as well as the remaining allegations in paragraph 12.

## FACTS

13.    In October 2018, Marcus Mays lived in Romeoville, Illinois, with his grandparents. He was 30 years old and had an 8-year-old daughter, A.H.

**ANSWER:** Admit, on information and belief.

14.    In October 2018, Mays suffered from epilepsy.

**ANSWER:** The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14.

15. Mays had been diagnosed with this disease approximately three years earlier, in 2015.

**ANSWER:    The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15.**

16. Mays was being treated by a neurologist and had been prescribed medicine to help treat his epilepsy and prevent seizures.

**ANSWER:    The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16.**

17. On October 27 and 28, 2018, Mays was at the home he shared with his grandparents and was visiting with other family members.

**ANSWER:    The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17.**

18. After midnight on October 28, 2018, Romeoville police officers were dispatched to the Plaintiff's home.

**ANSWER:    Admit, on information and belief.**

19. The Romeoville police officers caused Mays to be transported to Presence St. Joseph Hospital in Joliet for a psychiatric evaluation.

**ANSWER:    The County Defendants admit, on information and belief, that Romeoville police transported Mays to the Presence St. Joseph Hospital in Joliet. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 19.**

20. The Romeoville police officers were informed that Mays took medication to help treat his epileptic seizures.

**ANSWER:    The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20.**

21. Sometime after Mays arrived at the hospital, the Joliet Police Department was summoned to the hospital.

**ANSWER:** **Admit, on information and belief.**

22.     The Joliet police officers who arrived at Presence St. Joseph Hospital decided to arrest

        Mays.

**ANSWER:** **Admit, on information and belief.**

23.     After the Joliet police officers arrested Mays, they took him from the hospital and

        eventually brought him to the Will County jail in Joliet.

**ANSWER:** **Admit, on information and belief.**

24.     At the Will County Jail, one or more Defendant OFFICERS and/or Defendant

        WELLPATH EMPLOYEES learned from Marcus Mays that he had a history of grand mal

        seizures and that he had a prescription for medication to treat it.

**ANSWER:** **The County Defendants deny the allegations made against the Defendant Officers in paragraph 24. The County Defendants admit, based on information contained in Mays' Jail medical records, that one or more Defendant Wellpath Employees was told by Marcus Mays during the intake medical screening that he had an alleged history of grand mal seizures. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 24.**

25.     One or more Defendant WELLPATH EMPLOYEE recorded the fact that Mays had a

        history of grand mal seizures in the reports that were generated during the intake process.

**ANSWER:** **The County Defendants admit, based on information contained in Mays's Jail medical records that one or more Wellpath employees recorded on the reports generated during the intake medical screening process that Mays told them he had a history of grand mal seizures. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 25.**

26.     Defendant QUENSEN-DIEZ recorded the fact that Mays had a history of grand mal

        seizures and had not been given his epilepsy medication while at the Jail during an

        evaluation she conducted of Mays on November 1, 2018.

**ANSWER:** **The County Defendants admit, on information, that Defendant Quensen-Diez recorded that Mays told her that he had a history of grand mal seizures in a mental health**

**and PREA screening that she conducted of Mays on November 1, 2018. The County Defendants deny, on information, the remaining allegations in paragraph 26.**

27.     Defendant QUENSEN-DIEZ did nothing to ensure that Mays received proper medical

        care despite learning that he suffered from epilepsy and had not been given medication on

        November 1, 2018.

**ANSWER:     The County Defendants deny, on information and belief, the allegations in paragraph 27.**

28.     Defendant OFFICERS, QUENSEN-DIEZ and WELLPATH EMPLOYEES interacted

        with Mays during the time that he was in custody at the Will County Jail.

**ANSWER:     The County Defendants deny, on information and belief, the allegations made in paragraph 28 against Defendant Officers Kavanaugh, Little, and Abdullah. The County Defendants admit, on information and belief, that Defendant Quensen-Diez interacted with Mays only once, on November 1, 2018. The County Defendants admit, on information and belief, that Defendant Officers Desadier, Villegas, and Coppes may have interacted with Mays, but only during the 3 pm to 11 pm shift on October 28, 2018, when they were assigned to the intake section of the Jail. The County Defendants admit, on information and belief, that Defendant Officer Hayes may have interacted with Mays, but only during the 3 pm to 11 pm shifts on October 28 and 29, 2018, when he was assigned to the intake section of the Jail. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 28.**

29.     Defendant OFFICERS, QUENSEN-DIEZ, and WELLPATH EMPLOYEES knew Mays

        had a history of seizures and was suffering from epilepsy.

**ANSWER:     The County Defendants deny the allegations made against them in paragraph 29.   The County Defendants admit, based on information contained in Mays's medical records, that one or more Wellpath employees became aware of Mr. Mays's alleged history of seizures – to the extent Mays reported it to them - when they conducted Mays's intake medical screening. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 29.**

30.     Defendant OFFICERS and WELLPATH EMPLOYEES had access to Defendant

        WELLPATH's own records, which documented Mays's history of seizures and that Mays

        was suffering from epilepsy and therefore should have known of Mays's history of

seizures and epilepsy diagnosis.

**ANSWER:** **The County Defendants deny the allegations made against the Defendant Officers in paragraph 30. The County Defendants admit, on information and belief, that Mays's medical records documented his alleged history of seizures - to the extent Mays reported it to Wellpath employees - and that Wellpath employees working in the Jail generally have access to detainees' medical records. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30.**

31.     In spite of that knowledge and access to Defendant WELLPATH's records, Defendant

OFFICERS, QUENSEN-DIEZ, and WELLPATH EMPLOYEES did nothing to ensure

that Mays obtained proper medical care.

**ANSWER:** **The County Defendants deny the allegations made against Defendant Officers and Defendant Quensen-Diez in paragraph 31. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 31.**

32.     Defendants could have arranged for Mays to be seen by a doctor, but they did not.

**ANSWER:** **The County Defendants deny the allegations made against them in paragraph 32. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 32.**

33.     Defendants could have taken the steps necessary to obtain the medicine that Mays had

been prescribed to treat his epilepsy, but they did not.

**ANSWER:** **The County Defendants deny the allegations made against them in paragraph 33. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 33.**

34.     Defendants did not make reasonable efforts to ensure that Mays was monitored or that his

condition was followed up on after he was admitted as an inmate in the Will County jail.

**ANSWER:** **The County Defendants deny the allegations made against them in paragraph 34. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 34.**

35.     Mays was not seen by a doctor while he was incarcerated at the Will County jail.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a**

**belief about the truth of the allegations in paragraph 35.**

36.     Mays was not given any medicine to treat his seizures while he was incarcerated at the

         Will County jail.

**ANSWER:     The County Defendants lack knowledge or information sufficient to form a
belief about the truth of the allegations in paragraph 36.**

37.     When an epileptic who is on anti-seizure medicine stops taking the medicine suddenly,

         there is an increased risk of the number and severity of seizures. It is widely known in the

         medical profession that if an epileptic is going to stop taking the medicine prescribed for

         him, the medicine's dosage should be gradually tapered.

**ANSWER:     The County Defendants lack knowledge or information sufficient to form a
belief about the truth of the allegations in paragraph 37.**

38.     On the morning of November 8, 2018, Marcus Mays had an epileptic seizure in his cell

         and died.

**ANSWER:     The County Defendants admit that Marcus Mays was pronounced dead by
paramedics in the Will County Jail in the morning of November 8, 2018. The County
Defendants lack knowledge or information sufficient to form a belief about the truth of the
remaining allegations in paragraph 38.**

39.     Defendants OFFICERS, QUENSEN-DIEZ, and WELLPATH EMPLOYEES failure to

         address Mays's serious health condition increased the risk that Mays would suffer a

         seizure like the one that killed him on November 8, 2018.

**ANSWER:     The County Defendants deny the allegations made against the Defendant
Officers and Defendant Quensen-Diez in paragraph 34. The County Defendants lack
knowledge or information sufficient to form a belief about the truth of the remaining
allegations in paragraph 39.**

**COUNT I**
(42 U.S.C. §1983, Due Process claim)

40.     Each of the preceding paragraphs is incorporated as if fully restated here.

**ANSWER:     The County Defendants incorporate and restate their answers to each of the
preceding paragraphs for their answer to paragraph 40 of Count I.**

41.     As more fully described above, Mays had a serious medical need: he was suffering from
        epilepsy.

**ANSWER:     The County Defendants lack knowledge or information sufficient to form a
belief about the truth of the allegations in paragraph 41.**

42.     As more fully described above, Defendants' actions or omissions with respect to Mays
        were objectively unreasonable and/or deliberately indifferent towards the serious medical
        needs of Mays and to the substantial risk of harm to him.

**ANSWER:     The County Defendants deny the allegations in paragraph 42.**

43.     Defendants failed to take appropriate steps to treat, supervise, and/or protect Mays, which
        was objectively unreasonable and/or constituted deliberate indifference towards his serious
        medical needs in violation of the Fourteenth Amendment to the United States Constitution.

**ANSWER:     The County Defendants deny the allegations in paragraph 43.**

44.     As a result of the objectively unreasonable and/or deliberately indifferent way in which
        Defendants treated Marcus Mays, they directly and proximately caused him to suffer
        physical and emotional pain and suffering before he died, diminished his chances of
        survival and/or caused the loss of his life, and caused his estate to incur funeral and burial
        expenses.

**ANSWER:     The County Defendants deny the allegations in paragraph 44.**

**COUNT II**
(42 U.S.C. 1983, *Monell* claim - Defendant SHERIFF)

**Individual County Defendants Abdullah, Coppes, Hayes, Jr., Villegas, Desadier, Little and
Kavanaugh do not respond to Count II because the claim and allegations in Count II are not
brought against them.**

45.     Each of the preceding paragraphs is incorporated as if fully restated here.

**ANSWER:     Defendants Sheriff and County incorporate and restate their answers to each**

**of the preceding paragraphs for their answers to paragraph 45 of Count II.**

46.     A sheriff in any county in Illinois, such as Defendant SHERIFF, is always the final

policy-making authority over a county jail's operations.

**ANSWER:     Defendants Sheriff and County admit that the Will County Sheriff, in his official capacity, is the final policymaking authority over the policies and procedures governing the operations of the Will County Jail.**

47.     As detailed above, Mays's constitutional rights were violated when Defendants were

objectively unreasonable and/or deliberately indifferent towards his serious medical needs.

**ANSWER:     Denied.**

48.     The violation of Mays's right to due process was caused in part by the customs, policies,

and widespread practices of Defendant SHERIFF, which result in the failure to provide

adequate medical care to the inmates in the Will County jail.

**ANSWER:     Denied.**

49.     These widespread or "de facto" policies include: (1) fostering an atmosphere where

correctional officers and medical staff are permitted to disregard inmates who complain

that they are sick; (2) failing to ensure that supervisors at the jail review the intake records

for newly admitted inmates to determine if any are in need of prompt medical attention; (3)

failure to supervise and monitor the work being done by Defendant OFFICERS who are

working at the jail to make sure that inmates with serious health issues are being cared for;

(4) failure to provide adequate training to correctional officers so that they can recognize

inmates who are struggling with health problems so that they can be promptly addressed;

(5) failure to ensure that there is a prompt response to all inmate requests for medical

attention.

**ANSWER:     Denied.**

50.     Defendant COUNTY and Defendant SHERIFF have long been aware that <u>failing</u> to provide adequate and timely treatment to detainees experiencing serious and life threatening medical needs is unconstitutional.

**<u>ANSWER</u>:**   **Denied.**

51.     As a direct and proximate result of these acts and omissions, Mays experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

**<u>ANSWER</u>:**   **Denied.**

**COUNT III**
(42 U.S.C. §1983, *Monell* policy claim - Defendant WELLPATH)

**<u>ANSWER</u>:**   **The County Defendants do not answer Count III because the claim and allegations in Count III are not brought against them.**

**COUNT IV**
(42 U.S.C. §12101, et seq., Americans With Disabilities Act: Will County )

**Individual County Defendants Abdullah, Coppes, Hayes, Jr., Villegas, Desadier, Little and Kavanaugh do not respond to Count IV because the claim and allegations in Count IV are not brought against them.**

58.     Each of the preceding paragraphs is re-alleged as if fully restated here.

**<u>ANSWER</u>:**   **Defendants County and Sheriff incorporate and restate their answers to each of the preceding paragraphs for their answer to paragraph 58 of Count IV.**

59.     Tide II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) applies to Defendants WILL COUNTY and KELLEY.

**<u>ANSWER</u>:**   **Admit.**

60.     The Will County Jail is a facility, and its operation comprises a program and service for Title II purposes.

**<u>ANSWER</u>:**   **Defendants County and Sheriff admit Title II applies to Will County Jail but deny the remaining allegations in paragraph 60 because it is an incomplete or inaccurate assertion of the applicable law.**

61.  Mays had epilepsy, a medical disability under the ADA, throughout the time he was in the

Defendants' custody and care.

**ANSWER:   Defendants County and Sheriff deny, on information and belief, that any of the County Defendants were aware that Mays had epilepsy throughout the time he was detained in the Will County Jail. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 61.**

62.  Defendants failed to reasonable accommodate Mays's medical disability and to modify

their facilities, operations, services, accommodations and programs to reasonable

accommodate Mays's disability, in violation of Title II of the ADA.

**ANSWER:   Denied.**

63.  Defendants' violations of the ADA were the proximate cause of Mays's injuries, damages

and death and the resulting damage to his estate.

**ANSWER:   Denied.**

66.  Plaintiff is entitled to recover, as the representative of Mays's estate, for those damages

sustained as described in this Complaint as a result of Defendants' violations of the ADA

which caused his death.

**ANSWER:   Denied.**

## COUNT V
(42 U.S.C. §12101, et seq., Americans With Disabilities Act: Wellpath )

**ANSWER:   The County Defendants do not answer Count V because the claim and allegations in Count V are not brought against them.**

## COUNT VI
(740 ILCS 180/1 *et seq.,* Illinois Wrongful Death)

73.  Each of the preceding paragraphs is incorporated as if fully restated here.

**ANSWER:   The County Defendants incorporate and restate their answers to each of the preceding paragraphs for their answer to paragraph 73 of Count VI.**

74.     As more fully described above, Defendants owed Mays the duty to refrain from willful and

        wanton acts or omissions that could cause him suffering or death.

**ANSWER:     The County Defendants deny the allegations in paragraph 53 because they are
an inaccurate or incomplete assertion of the law.**

75.     As more fully described above, Defendants breached their duty of care to Mays by

        willfully and wantonly committing one, more, or all of the following acts or omissions:

        ignoring the serious medical needs of Mays; failing to bring Mays's condition to the

        attention of medical personnel so that Mays could be properly treated; refusing Mays's

        requests for medical attention; failing to provide timely access to medical treatment for a

        serious condition of which they were aware; failing to monitor Mays for the foreseeable

        risk of an epileptic seizure; and/or otherwise acting willfully and wantonly towards Mays,

        in disregard for his medical needs.

**ANSWER:     The County Defendants deny the allegations in paragraph 75.**

76.     As a direct and proximate result of one or more of the foregoing willful and wanton acts

        and/or omissions of Defendants, Marcus Mays died on November 8, 2018.

**ANSWER:     The County Defendants deny the allegations in paragraph 76.**

77.     He was survived by a daughter, A.H., who is 8 years old and who is his next of kin under

        Illinois law.

**ANSWER:     The County Defendants lack knowledge or information sufficient to form a
belief about the truth of the allegation in paragraph 77.**

78.     Defendant COUNTY, Defendant SHERIFF, and Defendant WELLPATH are sued in this

        count of the complaint under the doctrine of *respondeat superior,* therefore those

        government entities are responsible for their employees' acts or omissions, which were

        performed while they were acting within the scope of their employment.

**ANSWER:**    Defendants County and Sheriff acknowledge they are being sued under the doctrine of *respondeat superior*. Defendants County and Sheriff deny the remaining allegations in paragraph 78 because they are an incomplete assertion of the law.

79.    As a result of the wrongful death of Marcus Mays, his daughter has suffered and will continue to suffer profound grief as well as the loss of support, society and comfort in the future.

**ANSWER:**    The County Defendants deny the allegations in paragraph 79.

## COUNT VII
(Illinois Survival Claim - Willful and Wanton Claim)

80.    Each of the preceding paragraphs is incorporated as if fully re-stated here.

**ANSWER:**    The County Defendants incorporate and restate their answers to each of the preceding paragraphs for their answer to paragraph 80 of Count VII.

81.    As more fully described above, Defendant OFFICERS and Defendant WELLPATH EMPLOYEES owed Mays the duty to refrain from willful and wanton acts or omissions that could cause Mays harm.

**ANSWER:**    The County Defendants deny the allegations in paragraph 81 because they are an inaccurate or incomplete assertion of the law.

82.    As more fully described above, Defendant OFFICERS and Defendant WELLPATH EMPLOYEES breached their duty of care by willfully and wantonly committing one, more, or all of the following acts or omissions: ignoring Mays's serious medical needs; failing to bring Mays's condition to the attention of medical personnel so that Mays could be properly treated; refusing Mays's requests for medical attention; foiling to provide timely access to medical treatment for a serious condition of which they were aware; failing to monitor Mays for the foreseeable risk of an epileptic seizure; and/or otherwise acting willfully and wantonly toward Mays, in total disregard for his medical needs and safety.

**ANSWER:** **The County Defendants deny the allegations brought against the Defendant Officers in paragraph 82. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 82.**

83.     As a direct and proximate result of one or more of the foregoing willful and wanton acts

        and/or omissions of Defendant OFFICERS and Defendant WELLPATH EMPLOYEES,

        Mays suffered serious emotional and physical pain and suffering prior to his death on

        November 8, 2018.

**ANSWER:** **The County Defendants deny the allegations brought against the Defendant Officers in paragraph 83. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 83.**

### COUNT VIII
(Illinois Survival Claim, Intentional Infliction of Emotional Distress)

84.     Each of the foregoing paragraphs is incorporated as if fully restated here.

**ANSWER:** **The County Defendants incorporate and restate their answers to each of the preceding paragraphs for their answer to paragraph 84 of Count VIII.**

85.     In October 2018, May was suffering from epilepsy.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 85.**

86.     Defendants knew that Mays needed medical care, and through their willful and wanton acts

        or omissions, they failed to take reasonable action to summon medical care for him.

**ANSWER:** **Denied.**

87.     Defendants' willful or wanton disregard of Mays' severe physical and emotional distress

        constitutes extreme and outrageous conduct.

**ANSWER:** **Denied.**

88.     Defendants knew their failure to help *Mays* was likely to, and did, cause Mays to suffer

        severe emotional distress, which he did suffer before he died.

**<u>ANSWER</u>: Denied.**

**The County Defendants deny that Plaintiff is entitled to any judgment, damages, or relief sought in this lawsuit.**

## AFFIRMATIVE DEFENSES

**A. Affirmative defenses to federal law claims**

1.      Defendants Frederick Abdullah, Derek Coppes, Edward Hayes, Jr., Kevin Villegas, Carmen Desadier, Nathan Little, and Charles Kavanaugh (collectively, "Individual County Defendants") were, at the time of the alleged events in October-November 2019, corrections officers or supervisors employed in the Will County Jail who performed discretionary functions. At all times material to the allegations in plaintiff's first amended complaint, a reasonable corrections officer or sergeant objectively viewing the facts and circumstances that the Individual County Defendants faced could have believed his or her actions to be lawful, in light of clearly established law and the information he or she possessed.   In other words, the Individual County Defendants did not knowingly violate clearly established constitutional rights of which a reasonable person would have known.   The Individual County Defendants are thus entitled to qualified immunity as a matter of law on plaintiff's federal constitutional claims brought against them in their individual capacities.

2.      The Individual County Defendants are not medical providers and do not provide medical advice, care, or treatment to inmates at the Will County Jail. Consequently, the Individual County Defendants were entitled to and did rely on the professional judgment of trained medical providers or medical staff who examined or treated Marcus Mays during his detention in the Jail in October-November 2019.

**B. Affirmative defenses to state law claims**

I.     <u>Immunities under the Tort Immunity Act</u>

Defendants Will County ("County") and Will County Sheriff Mike Kelley, in his official capacity ("Sheriff") are local public entities. Plaintiff alleges that Defendants David Reed, Frederick Abdullah, Derek Coppes, Edward Hayes, Jr., Kevin Villegas, Carmen Desadier, Nathan Little, and Charles Kavanaugh employed by the Sheriff ("Defendant Officers") and Defendant Quensen-Diez employed by the County were public employees who acted within the scope of their employment at all relevant times during Marcus Mays's detention in the Will County Jail in October-November 2018. Accordingly, the County Defendants are entitled to the following immunities under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1 et seq.

1.     Plaintiff alleges Mr. Mays died as a result of the acts or omissions of Defendant Officers employed by the Sheriff, Defendant Quensen-Diez employed by Defendant County, and Wellpath employees. The County and Sheriff are not liable for death or injury resulting from an act or omission of any officer or employee of the County or Sheriff where the officer or employee is not liable. 745 ILCS 10/2-109.

2.     Defendant Officers cannot be liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

3.     Defendant Sheriff Kelley, in his official capacity, serves in a position involving the exercise of discretion and determination of policy, including the final determination or adoption of the policies and procedures of the operation of Will County Jail. As such, the Sheriff cannot be liable for death or injury resulting from any discretionary act or omission in determining or adopting Jail policies or procedures, as alleged, even if he abused his discretion. 745 ILCS

10/2-201.

4.      Defendant Officers, at all relevant times, worked in positions in the Will County Jail involving the exercise of discretion in executing certain Jail operations or in implementing certain Jail policies or procedures. As such, they, respectively, cannot be liable for death or injury resulting from their respective acts or omissions in exercising discretion in their tasks even if they abused their discretion. 745 ILCS 10/2-201.

5.      Defendants County and Sheriff cannot be liable for Defendant Sheriff's alleged failure to train, supervise, or monitor Defendant Officers or any other County or Sheriff employees. 745 ILCS 10/4-103.

6.      Plaintiff alleges Defendant Officers and Defendant Quensen-Diez failed to monitor Mr. Mays during his detention in the Will County Jail in October/November 2018. The County Defendants cannot be liable for an injury caused by the alleged failure of any County or Sheriff's officers or employees to monitor Mr. Mays during his detention in the Jail. 745 ILCS 10/4-103.

7.      The County Defendants cannot be liable for Mr. Mays's death or injuries allegedly caused by the alleged failure of Defendant Officers or Defendant Quensen-Diez to arrange for a doctor to see Mr. Mays or obtain medicine for Mr. Mays to treat his alleged epilepsy after one or more Wellpath employees or medical staff conducted Mays' intake medical screening upon his arrival in the Jail in October 2018. On information and belief, medical staff employed by Wellpath became aware of Mr. Mays's alleged history of seizures – to the extent Mays reported it to them - when they conducted Mays's intake medical screening. Thereafter, on information and belief, Defendant Officers and Defendant Quensen Diez assumed the medical staff was addressing Mays' medical needs, including needs concerning his alleged history of seizures and epilepsy, and relied upon the medical staff's professional judgment in this regard. Additionally, on information and

belief, Defendant Officers did not know from their observation or consideration of all the relevant conditions and circumstances that Mr. Mays was in need of a doctor, medicines, or medical care for any problem related to his alleged epilepsy or history of seizures in the Jail; or that Mays had a history of seizures or epilepsy; or that Mays was being denied access to medical providers or care for his medical needs in the Jail; or that Mays's medical needs were being ignored or that he was being mistreated by any medical providers or medical staff in the Jail. Consequently, Defendant Officers acted reasonably during the relevant time, and their conduct was not willful and wanton; therefore they cannot be held liable. 745 ILCS 10/4-105.

8.     The County Defendants cannot be liable for Mr. Mays's death or injuries caused by the alleged failure of Defendant Officers or Defendant Quensen-Diez to make an adequate physical examination of Mr. Mays for the purpose of determining whether he had a physical condition or was allegedly displaying symptoms of a serious medical need that would constitute a hazard to his health and safety in the Will County Jail. 745 ILCS 10/6-105.

9.     The County Defendants cannot be liable for Mr. Mays's death or injuries caused by the alleged failure of Defendant Officers or Defendant Quensen-Diez to recognize or diagnose Mr. Mays's alleged epilepsy or seizure disorder or any serious medical needs. 745 ILCS 10/6-106.

10.     On information and belief, County or Sheriff's officers or employees documented or passed on information concerning Mr. Mays during his detention in the Jail in October/November 2018. The Defendant Officers cannot be liable for Mr. Mays' death or any other injury caused by any negligent misrepresentation or provision of any information orally, in writing, or in electronic form on their respective part. 745 ILCS 10/2-210. The County and Sheriff cannot be liable for any misrepresentation of its officers or employees, whether or not such misrepresentation is negligent or intentional. 745 ILCS 10/2-106. The County and Sheriff also

cannot be liable for any injury caused by any negligent misrepresentation or the provision of information, orally or in writing, by their employees. 745 ILCS 10/2-107.

11.     The County Defendants cannot be liable for any failure to provide sufficient equipment, personnel, supervision, or facilities in the Will County Jail. 745 ILCS 10/4-103.

12.     Plaintiff alleges Marcus Mays died on November 8, 2018. Plaintiff first brought state law claims against the Individual County Defendants on November 6, 2020. Consequently, the state law claims against all the County Defendants in Counts VI to VIII are time-barred by the one-year statute of limitations applicable to those claims. 745 ILCS 10/8-101.

II.     Contributory fault

1.     The County Defendants deny any liability to plaintiff. In the alternative, if the County Defendants or any of their employees are held liable, plaintiff's recovery should be reduced by Mr. Mays's contributory fault.

2.     At all times relevant in the first amended complaint, Mr. Mays owed a duty of ordinary care for his own health and welfare.

3.     On information and belief, Mr. Mays violated his duty of ordinary care by committing one or more of the following negligent acts or omissions:

        (a)     failed to accurately report his symptoms and conditions to correctional officers and/or medical staff in the Jail;

        (b)     failed to fully and accurately report his medical history to correctional officers and/or medical staff in the Jail;

        (c)     failed to follow medical directives and orders given by his medical providers; and

        (d)     failed to take medications or comply with medication regimens

prescribed for him by his medical providers.

4.    One or more of the foregoing acts, omissions or violations of Illinois law was a proximate cause or the proximate cause of Mr. Mays's injuries and death and plaintiff's claimed injuries.

5.    Illinois law provides that "In all actions on account of bodily injury or death …, based on negligence …, the plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." 735 ILCS 5/2-1116.

6.    Under 735 ILCS 5/2-1116, plaintiff's recovery must be barred or reduced by Mr. Mays's comparative fault.

For these reasons, the County Defendants respectfully request that the Court enter an Order barring plaintiff's recovery if Mr. Mays is found to be more than 50% at fault or reducing plaintiff's recovery by Mr. Mays's comparative fault if such fault is 50% or less of the total combined fault, and award the County Defendants their costs herein.

III.    Failure to mitigate damages

1.    At the times and places alleged in the first amended complaint, Mr. Mays had a duty to take reasonable measures to mitigate his damages. Despite this duty, Mr. Mays failed to mitigate his damages in the following ways:

(a)    failed to accurately report his symptoms and conditions to correctional

officers and/or medical staff in the Jail;

(b)     failed to fully and accurately report his medical history to correctional

officers and/or medical staff in the Jail;

(c)     failed to follow medical directives and orders given by his medical

providers; and

(d)     failed to take medications or comply with medication regimens

prescribed for him by his medical providers.

2.     Plaintiff is not entitled to recover for any damages that could have been mitigated

by Mr. Mays by taking reasonable measures on his part.

For these reasons, the County Defendants request that this Court enter judgment in bar of

plaintiff's first amended complaint, or in the alternative, deny plaintiff the elements of damages

that Mr. Mays could have been mitigated; award the County Defendants attorneys' fees and costs

at plaintiff's expense; and additional relief as the Court deems just.

**JURY DEMAND**

The County Defendants request a jury trial.

Respectfully submitted,

**WILL COUNTY, SHERIFF MIKE KELLEY,**
**FREDERICK ABDULLAH, DEREK COPPES,**
**EDWARD HAYES, JR., KEVIN VILLEGAS,**
**CARMEN DESADIER, NATHAN LITTLE,**
**and CHARLES KAVANAUGH,**

By:     *s/Bhairav Radia*
One of the County Defendants' Attorneys

Bhairav Radia, #6293600
Julie M. Koerner, #6204852
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:   (847) 291-0200
Fax: (847) 291-9230
E-mail:   bradia@okgc.com
              jkoerner@okgc.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

AMBER HIRSCH, as administrator of )
the estate of decedent, MARCUS MAYS, )
and on behalf of decedent's next of kin, )
                             ) Case No. 19-CV-7398
              Plaintiff, )
      v. ) Judge Thomas M. Durkin
                             )
WILL COUNTY, Illinois, Will County ) Magistrate Jeffrey I. Cummings
Sheriff Mike Kelley, WILL COUNTY )
SHERIFF'S OFFICERS DAVID REED, )
FREDERICK ABDULLAH, DEREK COPPES, )
EDWARD HAYES, JR., KEVIN VILLEGAS, )
CARMEN DESADIER, NATHAN LITTLE, )
and CHARLES KAVANAUGH, WILL COUNTY )
EMPLOYEE ERICA QUENSEN-DIEZ, )
WELLPATH, LLC, and WELLPATH, LLC )
EMPLOYEES PENELOPE JOHNSON, CINDY )
SMITH, GUADALUPE ZUNIGA, OLIVIA )
SIMPRI-MENSAH, YOUNG KIM, KIA GREEN, )
AMANDA NORTH-SHEA, CARMINA )
FELICIANO, CARMINA SHAW, CORINA )
SHAW, DEATRICE BLACK, MOLLY WEIGEL, )
DONNA PETRAUSKIS, TIFFANY UTKE, )
MOHAMMED IBRAHIM, PATRICIA LOPARCO,)
SHEILA CORRIGAN, and JEFFREY SAFFOLD, )
                             )
            Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2020, I electronically filed the attached *Answer to first amended complaint by Will County, Mike Kelley, Frederick Abdullah, Derek Coppes, Edward Hayes, Jr., Kevin Villegas, Carmen Desadier, Nathan Little, and Charles Kavanaugh* with the Clerk of Court using the CM/ECF system, which will notify all attorneys of record, all of whom are participants in the CM/ECF system.

                            By:     *s/Bhairav Radia*
                                  Bhairav Radia, #6293600
                                  O'Halloran Kosoff Geitner & Cook, LLC
                                  650 Dundee Road, Suite 475
                                  Northbrook, Illinois 60062
                                  Telephone:   (847) 291-0200
                                  E-mail: bradia@okgc.com