UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMBER HIRSCH, as administrator of the estate of decedent, MARCUS MAYS, and on behalf of decedent's next of kin,<br><br>Plaintiff,<br><br>v.<br><br>WILL COUNTY, ILLINOIS et al.,<br><br>Defendants. | No. 19-cv-07398<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Marcus Mays, a diagnosed epileptic, died of a seizure while in his cell at the Will County jail. Following his death, the Administrator of Mays' estate brought this action against Will County, Will County employee Erica Quensen-Diez, Will County Sheriff Mike Kelley, several Will County Sheriff officers, Wellpath, LLC, and seventeen Wellpath employees. Wellpath and the seventeen employees (collectively, the "Wellpath Defendants") each move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss two of the six claims brought against them; namely, an Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, claim against Wellpath, and a state law claim for intentional infliction of emotion distress ("IIED") against both Wellpath and the employees. For the reasons set forth below, the Wellpath Defendants' motions, R. 69 and R. 113, are denied.

1

## Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.,* 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Marcus Mays died from a seizure while alone in his jail cell on November 8, 2018. At the time of his death, Mays was a 30-year-old father who suffered from epilepsy and had only been at the Will County jail for a little over a week.

Mays' estate ("Plaintiff") contends that his death was preventable, and that the Will County Sheriff's Office and Wellpath (a private company that handles inmate health care at the jail) are largely responsible for his early passing. Plaintiff alleges that when Mays arrived at the Will County jail in late October 2018, he informed either an officer or Wellpath employee, or both, that he had a history of grand mal seizures and that he had previously been prescribed anti-seizure medication.[1] R. 65 ¶¶ 24-25; R. 122 at 2. Mays shared this information with a Will County employee a few days later, on November 1, 2018, and both that employee and the Wellpath employee made note of Mays' epilepsy in jail records. R. 65 ¶¶ 25-26. Also on November 1, Mays allegedly informed the Will County employee that he had not received his anti-seizure medicine since his arrival at the jail days earlier. *Id.* ¶ 26. Despite sharing this information with Wellpath and county officials, Mays never received his anti-seizure medicine from anyone at the jail, nor was he seen by a doctor or otherwise monitored for his condition before his untimely death. *Id.* ¶¶ 30-36.

Plaintiff brings eight claims on behalf of Mays' estate. Count I is a deliberate indifference claim under 42 U.S.C. § 1983 brought against all defendants; Counts II and III are *Monell* claims brought against the Will County Sheriff and Wellpath, respectively; Counts IV and V are ADA claims brought against Will County and

---

[1] The complaint does not describe how grand mal seizures are different from other seizures, but courts have said that they involve "violent jerking, stiffness of muscles, and loss of consciousness." *United States v. N. Illinois Special Recreation Ass'n*, 168 F. Supp. 3d 1082, 1086 (N.D. Ill. 2016). "During a grand mal seizure, individuals can have a bowel movement, urinate, vomit and/or choke. They can also experience difficulty breathing." *Id.*

3

Wellpath, respectively; Count VI is an Illinois Wrongful Death claim, 740 ILCS 180/1 *et seq.*, brought against all defendants; Count VII is a willful and wanton claim under the Illinois Survival Act, 755 ILCS 5/27-6, brought against the individual officers and individual Wellpath employees; and Count VIII is an IIED claim under Illinois law brought against all defendants. As stated, the Wellpath Defendants moved to dismiss Counts V and VIII.[2] The Court turns to those counts next.

## Analysis

**I.      Americans with Disabilities Act Claim Against Wellpath**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a claim under Title II, a plaintiff must sufficiently allege "[1] that he is a qualified individual with a disability, [2] that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotation marks omitted); *see also Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996).

---

[2] Wellpath filed its answer to the other claims concurrently with its motion to dismiss. *See* R. 68. So did the individual Wellpath employees. *See* R. 112. The individual Wellpath employees bringing the motion to dismiss are: Deatrice Black, Sheila Corrigan, Carmina Feliciano, Kia Green, Mohammed Ibrahim, Penelope Johnson, Young Kim, Patricia Loparco, Amanda North-Shea, Donna Petrauskis, Jeffrey Saffold, Corina Shaw, Olivia Simpri-Mensah, Cindy Smith, Tiffany Utke, Molly Weigel, and Guadalupe Zuniga.

4

Wellpath takes issue with the second and third elements. Starting with the second element, Wellpath argues that it is not a "public entity" within the meaning of the ADA. Title II defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority []." 42 U.S.C. § 12131(1). Wellpath contends that it does not fall into any of these buckets since it is a private entity that provides medical services to inmates. Based on the plain language of the statute, that argument is likely correct. But at this early stage in the proceedings, the Court declines to dismiss the ADA claim on this basis since it appears unsettled in the Seventh Circuit whether a private entity (Wellpath) that performs services for a public entity (Will County) is considered an "instrumentality of a . . . local government." *Compare DeJesus v. Wexford Health Sources, Inc., et al.*, 20-CV-1682, Dkt. 63 (N.D. Ill. July 30, 2020) (whether Wexford Health Sources is considered a "public entity" because it provides services for the Illinois Department of Corrections is a "a mixed question of law and fact" that cannot be resolved on a motion to dismiss), *with Peters v. Butler*, 2019 WL 1304223, at *2 (S.D. Ill. Mar. 21, 2019) (dismissing ADA claim against Wexford because it is "not a public entity"). Resolution of this issue will be better served at summary judgment, where the parties and Court will benefit from a more developed record. To this point, almost every case that Wellpath cited in its brief decided the "public entity" issue at summary judgment, not on a motion to dismiss. This Court will do the same.

5

Wellpath's argument concerning the third element likewise fails. As stated, that element requires allegations plausibly showing that Mays was denied benefits or discriminated against because of his disability. *See Wagoner*, 778 F.3d at 592. According to Wellpath, the complaint does not make such a showing. The Court disagrees. "[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999); *see also CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528-29 (7th Cir. 2014) (recognizing that discrimination by reason of disability may be established by showing that "the defendant refused to provide a reasonable modification"). Here, Plaintiff alleges that Wellpath refused to reasonably accommodate Mays' epilepsy by not providing him with anti-seizure medicine or arranging for a doctor's visit, and otherwise failing to monitor his condition during the week or so that he was in jail. Although discovery will likely show the extent to which Mays specifically asked for accommodations, the allegations in the complaint are sufficient at the pleading stage to show that Mays was discriminated against because of his epilepsy. *See Earl v. Espejo*, 2017 WL 3704826, at *3 (N.D. Ill. Aug. 28, 2017) (arrestee plausibly alleged ADA discrimination based on his mental illness because officers denied his requests for medical attention); *Paine ex re. Eilman v. Johnson*, 2010 WL 785397, at *8-9 (N.D. Ill. Feb. 26, 2010) (ADA claim could proceed on the theory that defendant officers "fail[ed] to reasonably accommodate [the plaintiff's] known, and arguably manifest, mental illness" while in police custody).

6

One last note: Wellpath submits that Plaintiff's disability claim is actually a repackaged deliberate indifference claim, which is not actionable under the ADA. Wellpath is correct that a claim for inadequate medical treatment is improper under the ADA. As the Seventh Circuit has explained, "it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the [ADA]." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). But Plaintiff is not challenging the quality of Wellpath's medical services, or at least that is not how the Court reads the allegations at this stage in the proceedings. Instead, and as explained above, Plaintiff seems to be alleging that Wellpath refused to provide Mays with *any* medical care and failed to make any reasonable accommodations for his disability even though Wellpath knew he suffered from epilepsy. Such a claim is proper under the ADA, and Plaintiff has plausibly alleged it here. *See, e.g.*, *Stokes v. City of Chicago*, 2018 WL 497365, at *3 (N.D. Ill. Jan. 22, 2018) (declining to dismiss arrestee's ADA claim, noting that when jail guards "have a person in custody who is disabled, and they are aware of that disability, there is a duty to reasonably accommodate the arrestee's disability") (internal citation and quotation omitted).

## II.  Intentional Infliction of Emotional Distress Claim Against the Wellpath Defendants

Under Illinois law, the elements of an intentional infliction of emotional distress claim are: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad.*

7

*Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El*, 602 F.3d at 864 (quoting *Kolegas*, 607 N.E.2d at 211). In determining whether conduct meets the "extreme and outrageous" standard, courts consider three main factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 811 (Ill. 1998)).

The Wellpath Defendants contend that the IIED claim should be dismissed for two reasons, neither of which are persuasive. They argue first that Plaintiff's allegations are conclusory in nature and fail to identify specific wrongdoing attributable to them. Not so. As stated earlier, Mays allegedly informed Wellpath staff that he was an epileptic who took medicine to treat his seizures. Wellpath staff made note of this information in their intake documents. At no point over the next 10 days or so did Wellpath staff follow up with Mays, administer anti-seizure medicine, arrange for him to see a doctor, or otherwise monitor his condition. This complete absence of care is troubling not just because the Wellpath Defendants allegedly knew about Mays' epilepsy, but also because Wellpath was hired by Will County for the specific purpose of providing medical services to inmates. *See* R. 65 ¶¶ 11-12.

8

What is more, Plaintiff alleges that the Wellpath Defendants either knew or should have known that a sudden withdrawal of anti-seizure medicine could increase the frequency and severity of subsequent seizures. According to Plaintiff, it is widely known in the medical profession that people who stop taking their epilepsy medicine should do so gradually. At the Will County jail, the Wellpath Defendants are the medical professionals, not the inmates. As such, the Wellpath Defendants exercised considerable control over Mays' medical care and presumably knew what could (and ultimately did) happen to him if his epilepsy was not properly treated. Discovery will likely bear out additional details regarding the Wellpath Defendants' conduct, but the Court can reasonably infer at this stage in the proceedings that their alleged failure to take any reasonable steps to address Mays' health condition was "extreme and outrageous" behavior. *See Franciski*, 338 F.3d at 769 (noting that conduct may be "extreme and outrageous" if the defendant has "more power or control" over the plaintiff and if the defendant is "aware the plaintiff [is] peculiarly susceptible to emotional distress" due to a "physical or mental peculiarity"); *Awalt v. Marketti*, 74 F. Supp. 3d 909, 942 (N.D. Ill.) (ignoring an inmate's epilepsy could be considered "extreme and outrageous" conduct).

Wellpath's second argument is that the IIED claim should be dismissed because the complaint fails to allege how Wellpath, the corporation, is liable for the actions of its employees under a theory of *respondeat superior*. Wellpath does not flesh out this argument in its briefs beyond a sentence or two, nor does Wellpath cite to any case law, so the Court is somewhat in the dark as to Wellpath's exact position. To the extent Wellpath contends that it cannot be liable for the intentional torts of its employees, that

9

argument has been rejected time and again. *See, e.g.*, *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 817 (7th Cir. 1985) ("In an ordinary tort case involving an employee's intentional misconduct, the plaintiff sues the employer for the employee's tort and can recover damages on a theory of *respondeat superior* if he can show that the employee committed the tort in the course of his employment."). If Wellpath's argument is based instead on the sufficiency of the allegations in the complaint, that argument fails as well. The complaint plainly states that the individual Wellpath defendants "are or were employees and/or agents of Defendant Wellpath" and were "acting within the scope of the employment and under color of law." R. 65 ¶ 12. The complaint also alleges that Wellpath staff interacted and talked with Mays during his brief time at the jail. *Id.* ¶¶ 25, 28. The Court can reasonably infer, then, that the relevant events giving rise to this action occurred in the course of the Wellpath staff's employment. The IIED claim accordingly survives.

## Conclusion

For all these reasons, the Wellpath Defendants' partial motions to dismiss are denied. They shall answer Plaintiff's amended complaint in its entirety by May 3, 2021. The parties' next status hearing is set for July 28, 2021 at 9:00 A.M, at which time they should be prepared to discuss the progress of discovery.

ENTERED:

*Thomas M Durkin*

———————————————
Honorable Thomas M. Durkin
United States District Judge

Dated: April 19, 2021