## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMBER HIRSCH, as administrator of the estate of decedent, MARCUS MAYS, and on behalf of decedent's next of kin, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 CV 7398 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| WILL COUNTY, et al., | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff's petition for attorney's fees incurred in litigating her fifteenth motion to compel against defendant Wellpath, LLC, (Dckt. #368), and Wellpath's objection thereto, (Dckt. #373). For the reasons set forth below, plaintiff's petition for attorney's fees is granted in part, and the Court awards plaintiff $23,253.75 in fees.

## I.    BACKGROUND[1]

Plaintiff Amber Hirsch, as administrator of the estate of decedent Marcus Mays, initiated this action against Will County, Will County Sheriff Mike Kelley (along with several Will County employees and officers), Wellpath, LLC (and its predecessor), and seventeen Wellpath employees after Mays died of a seizure in his cell at the Will County Adult Detention Center. (hereinafter, "Will County Jail"). According to the allegations of plaintiff's second amended complaint, (Dckt. #230), upon his intake to Will County Jail on October 28, 2018, Mays informed jail staff of his history of grand mal seizures, and that he took medication for this

---

[1] The Court presumes familiarity with the facts of this case and includes only those facts that are relevant to the fee dispute before the Court.

condition. Yet, defendants did not provide Mays with medication, and he died of a seizure eleven days later, on November 8, 2018. Mays brings claims pursuant to 42 U.S.C. §1983, among other statutes, for failure to provide proper medical care in violation of his constitutional rights. At all relevant times, Will County contracted with defendant Wellpath to provide medical care at Will County Jail.

Plaintiff's effort to obtain discovery from Wellpath has resulted in a protracted, energy draining battle that, in turn, has spawned a voluminous motion practice. On February 13, 2023, plaintiff filed her *fifteenth* motion to compel discovery from defendant Wellpath, (Dckt. #273), in which she asked the Court to order Wellpath to produce sixteen categories of documents and information.[2] With respect to almost every category of documents, Wellpath – according to plaintiff – ignored plaintiff's repeated requests for complete production even though some of the documents at issue were the subject of this Court's prior orders.[3]

Upon receipt of the motion, the Court directed the parties to meet and confer to discuss each category of documents at issue to determine if they could reach agreement and, if not, for Wellpath to file a response regarding the disputed categories of documents. (Dckt. #275). Ultimately, on March 15, 2023, Wellpath filed a response to the motion, (Dckt. #289). Wellpath maintained that eight of the sixteen disputed categories of documents "have been, or will in short

---

[2] Those categories of documents related to: (I) Dr. Kim's Personnel File; (II) ESI; (III) Tech Log; (IV) Notice of New ESI Retention Policy; (V) Where the Individual Defendant E-mails are Stored; (VI) Intake Log; (VII) Documents Tracking Nurse Simpri-Mensah's Intake Process; (VIII) Wellpath's Daily Reports During Mays' Incarceration; (IX) Mays' Chronic Care Referral Form; (X) Assignments of Wellpath Staff during Mays' Incarceration; (XI) Attachments to Wellpath's November 2016 Bid Proposal; (XII) Wellpath's Health Training for Correctional Officers Documents; (XIII) Wellpath's Grievance Log; (XIV) Clinical Monograph Forms; (XV) Wellpath's Leadership Audit of Wellpath Staff; and (XVI) Various *Monell* Discovery Requests.

[3] Specifically, plaintiff argued that Wellpath failed to comply with this Court's prior orders related to the tech log and the *Monell* requests. (Dckt. #273 at 3-4, 8 (citing Dckt. #205)).

order be resolved," (*Id.* at 1), due to either its supplemental production or its forthcoming verification that certain documents could not be located after a reasonable diligent search. For the categories that remained in dispute, Wellpath continued to assert its objections to producing any additional documents, arguing that the requests were duplicative, overly broad, or sought information and documents that are not relevant to the claims at issue.

Upon review of the parties' submissions, this Court scheduled a motion hearing for May 16, 2023. In advance of the hearing, the Court directed the parties to continue to meet and confer in an effort to resolve any disputed categories of documents. Further, with respect to each category of documents that Wellpath asserted either could not be located or did not exist, the Court directed Wellpath to file a sworn declaration describing the specific efforts taken to locate such documents and verifying that no responsive documents were located. (Dckt. #316). The Court also ordered the parties to file a supplemental joint status report in advance of the motion hearing, which – when ultimately filed, (Dckt. #322) – revealed plaintiff's position that fifteen of the sixteen categories of documents remained in dispute, and Wellpath's conflicting position that a number of disputed categories had been resolved.

This Court held its first motion hearing on May 16, 2023, after which it ordered Wellpath to:

> (1) Provide the previously ordered – but yet to be provided – sworn declaration regarding documents it maintained could not be located or did not exist, which, by the Court's count, related to at least five categories of documents (i.e., IX (May's Chronic Care Referral Form), X (Assignments of Wellpath Staff), XII (Wellpath's Health Training for Correctional Officers), XIII (Wellpath's Grievance Log), and XV (Wellpath's Leadership Audits);

> (2) With respect to category II (ESI), explain in detail the status of its ongoing efforts to review, and produce, the thousands of "items" reflected in Wellpath's HIT reports; and

(3) Produce certain responsive documents and information with respect to categories V (Where E-mails are Stored), XI (Attachments to Bid Proposal), and XVI (*Monell* Discovery, as further specified by the Court).

(Dckt. #327). The Court then continued the motion hearing to the following week to ensure compliance with the above initial directives and to further address the substantive nature of plaintiff's fifteenth motion to compel.

At the continued motion hearing the following week, the Court addressed each category of disputed documents at length. Following the hearing, on May 25, 2023, the Court entered an order (hereinafter, the "May 25 Order"), granting plaintiff's fifteenth motion to compel in part and ordering Wellpath's further production, by June 9, 2023, with respect to the following categories of documents: (I) Dr. Kim's Personnel File; (II) ESI; (III) Tech Log; (IV) ESI Retention Policy; (VI) Intake Log; (VII) Nurse Simpri-Mensah's Intake Process; and (XIV) Clinical Monograph Forms. (Dckt. #334; *see also* Dckt. #335). With respect to categories (V) Where E-Mails are Stored; (VIII) Wellpath's Daily Reports; (IX) Mays' Chronic Care Referral Form; (X) Assignments of Wellpath Staff during Mays' Incarceration; (XI) Attachments to Wellpath's November 2016 Bid Proposal; (XII) Wellpath's Health Training for Correctional Officers Documents; XIII (Wellpath's Grievance Log); and XV (Leadership Audits), the Court concluded that no further action was required by Wellpath based primarily on its recent supplementation and its court-ordered sworn declarations that no further documents were located following its diligent searches. (Dckt. #334). As for category XVI, covering various *Monell*-related requests, the Court denied plaintiff's motion with respect to Second Request for Production ("RFP" No. 3); plaintiff withdrew her motion with respect to Second RFP No. 12; and – based on Wellpath's recent Court-ordered production related to Second RFP Nos. 14 and

15 – directed the parties to meet and confer with respect to those requests, as well as with RFP Nos. 1, 2 and 5.  (*Id*.).

Plaintiff's effort to secure Wellpath's compliance with the May 25 Order has, once again, resulted in a protracted process.  Indeed, on June 30, 2023, the parties filed a joint status report, (Dckt. #342), in which plaintiff maintained that Wellpath had failed to fully comply with this Court's May 25 Order with respect to six categories of documents for which the Court ordered further production.  Based on that filing, the Court entered yet another order on August 2, 2023, (Dckt. #349), providing detailed guidance to Wellpath – including ordering additional production of documents and information – to ensure Wellpath's full compliance with the May 25 Order.[4] Since that time, the Court has granted Wellpath multiple extensions of time, and has held two additional hearings regarding Wellpath's compliance with the May 25 Order.  (*See* Dckt. #354 & #363).

As recently as the September 25, 2023 status hearing with the Court – over seven months after the motion was filed and four months after the Court granted plaintiff's fifteenth motion to compel – Wellpath – by its own admission – had yet to fully comply with the May 25 Order.[5] Based upon its determination that Wellpath lacked substantial justification for its resistance to plaintiff's motion and its failure to promptly comply with the May 25 Order, the Court held that it would "award plaintiff her reasonable attorney's fees incurred in litigating the fifteenth motion

---

[4] Also in the August 2 Order, the Court limited the temporal scope of plaintiff's *Monell* RFP No. 5 from a ten-year period to a five-year period prior to Mays' death and a one-year period after.  (Dckt. #349 at 2).

[5] In particular, as of September 25, 2023, Wellpath had yet to produce 364 outstanding pages of ESI. (Dckt. #363).  The Court presumes that this production has since been completed.  (*See* Dckt. #366 at 1-2 (implying that the ESI either "has, or will be" tendered by the September 29 deadline to do so).

to compel," (Dckt. #363), and – to the extent the parties could not agree to the reasonable amount of fees – ordered the parties to submit their briefs, which are now before the Court.

In plaintiff's petition for fees, (Dckt. #368), which is supported by billing records and accompanying affidavits, plaintiff seeks to recover $26,415.00 for the fees incurred by attorneys Torreya Hamilton and Kathleen Hennessy in litigating the fifteenth motion to compel. In response, (Dckt, #373), Wellpath asserts that plaintiff is not entitled to fees under Rule 37 and – even if she is – her fees should be reduced substantially to account for Wellpath's "good faith" objections to certain disputed discovery requests, the complex nature of discovery, and to exclude certain hours unreasonably incurred in relation to the motion.

## II.  ANALYSIS

### A.  An award of attorney's fees is appropriate under Rule 37.[6]

Under Federal Rule of Civil Procedure 37(a)(5), if a motion to compel is granted – or if the disclosure or requested discovery is provided after the motion was filed – "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A); *see also Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994) ("The great operative principal of [Rule 37(a)(5)] is that the loser pays."). Similarly, under Rule 37(b), if a party fails to comply with a court order, the court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed.R.Civ.P 37(b)(2)(C).

---

[6] Although the Court already ordered on the record at the September 25 hearing that plaintiff was entitled to recover her reasonable attorney's fees related to the fifteenth motion to compel, the Court reiterates that ruling here to address Wellpath's renewed assertions in its response brief.

There are exceptions, however, and the Court will not order such a payment, if: (1) the motion was filed before the parties attempted to resolve their discovery dispute without court intervention; (2) the opposing party's nondisclosure, responses, objections, or non-compliance were substantially justified; or (3) other circumstances make the award of expenses unjust. Fed.R.Civ.P. 37(a)(5)(A)(i)-(iii)); Fed.R.Civ.P. 37(b)(2)(C).

"When a motion to compel is granted, the burden is on the opposing party to show that an award of costs would be unjust or that the opposing party's position was substantially justified." *Burkett ex rel. Est. of Burkett v. AIG Claim Servs., Inc.*, 244 F.R.D. 328, 330 (N.D.W.Va. 2005), *aff'd sub nom. Burkett v. AIG Claim Servs., Inc.*, No. 3:03-CV-1, 2007 WL 9734152 (N.D.W.Va. July 16, 2007) (citing *Rickels*, 33 F.3d at 787). Courts are afforded broad discretion in deciding if fees are warranted under Rule 37. *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *15 (N.D.Ill. Apr. 17, 2019), *objections overruled*, No. 17-CV-01682, 2020 WL 1248343 (N.D.Ill. Mar. 15, 2020) (citing *Patterson v. Coca-Cola Bottling Co. Cairo-Sikeston, Inc.*, 852 F.2d 280, 283 (7th Cir. 1988)).    ‼    !

Here – even though plaintiff's fifteenth motion to compel was not granted in its entirety – the Court concludes, within its discretion, that an award of reasonable attorney's fees is appropriate as Wellpath has failed to show that any of the above enumerated exceptions apply. First, as evident in plaintiff's fifteenth motion to compel itself, plaintiff did not file the motion until first attempting – on multiple occasions – to resolve the parties' disputes *without* court intervention. (*See, e.g.,* Dckt. #273 at 3 ("Plaintiff has repeatedly requested these emails and Wellpath counsel has simply ignored these requests for months."); 6 ("Plaintiff has requested a certification confirming that no such document exists, but Wellpath has ignored this request.")). Having fully exhausted her meet and confer efforts with respect to the sixteen categories of

documents at issue, some of which even related to prior orders of the Court, plaintiff was left with no alternative *but* to file the motion to compel.

Second, Wellpath has not persuasively shown that its objections to the disputed discovery requests, its continued opposition to plaintiff's motion, or its delay in complying with this Court's orders related to the motion were substantially justified. A legal position "is substantially justified if it posits a 'genuine dispute' or if reasonable people could differ as to the appropriateness of the contested action." *Ciesniewski v. Aries Cap. Partners, Inc.*, No. 116CV00817JPHTAB, 2019 WL 2869671, at *4 (S.D.Ind. July 3, 2019) (internal quotation and citation omitted). Here, there is no such "genuine dispute" and Wellpath's attempt to argue the opposite simply misconstrues the concept of substantial justification and the record itself.

For example, Wellpath argues that its "resistance" to producing certain documents in Dr. Kim's personnel file was due to the "ongoing good-faith discovery disputes between the parties" as to confidentiality. But this Court outright disagreed with Wellpath upon its *in camera* review of those documents, finding them plainly "relevant to the claims at issue in this case" and protected under the confidentiality orders already in place. (Dckt. #335). Thus, Wellpath's subsequent production of those documents, as required by the Court, does not – as Wellpath seems to imply – retroactively provide substantial justification for its initial unsupported objection to plaintiff's request. Similarly, the fact that Wellpath eventually produced the clinical monographs, tech log, retention policy, and certain responsive *Monell* discovery – again, solely as a result of plaintiff's motion – does not show that Wellpath's initial failure to produce this discovery was substantial justified. (Dckt. #373 at 3-5).

Instead, over the course of the months-long proceedings related to plaintiff's fifteenth motion to compel, the Court disagreed with almost every single one of Wellpath's objections

when it: (1) initially ordered Wellpath to produce responsive information and documents; (2) ordered Wellpath to properly verify its good faith searches for other relevant and responsive documents; and (3) granted plaintiff's motion with respect to eight remaining disputed categories of documents.  As such, Wellpath's attempt to hang its hat of substantial justification on the categories of documents that were resolved through its own supplementation is misplaced where – as here – even that supplementation (and the sworn declarations that certain documents did not exist) required the filing of the motion itself at the outset *and* continued prodding by the plaintiff for months thereafter to ensure compliance.[7]

Moreover, Wellpath's delay in compliance with the Court's May 25 Order, and the many orders that followed, further undermines Wellpath's assertion of substantial compliance and supports an award of attorney's fees in plaintiff's favor.  Indeed, courts have often awarded attorney's fees in the context of Rule 37 for months' long delays in complying with a court's discovery orders.  *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 21 CIV. 7504 (VSB), 2023 WL 3304287, at *11 (S.D.N.Y. May 8, 2023) (finding "delays of approximately five months in curing the deficient productions . . . sufficiently long to justify [monetary] sanctions"); *3801 Beach Channel, Inc. v. Shvartzman*, No. 05 Civ. 207 (CBA) (JO), 2007 WL 879668, at *6 (E.D.N.Y. Mar. 21, 2007) (finding that although less than three months was "not a particularly long period of non-compliance," monetary sanctions were appropriate against defendants who failed to comply with court orders to produce discovery).  On the instant record, the Court simply cannot agree that Wellpath's position in objecting to the motion and the

---

[7] Wellpath also points to the fact that the Court limited its obligation to produce certain *Monell*-related records for a five-year period of time (as opposed to the ten-year period sought by plaintiff) as evidence that its position was substantially justified.  (Dckt. #373 at 3-4).  However, the Court's ruling in this regard provides no support for the proposition that Wellpath's failure to produce any of the documents in question was substantially justified.

resulting delay in ensuring its ultimate compliance was "justified to a degree that could satisfy a reasonable person." *Burkett*, 244 F.R.D. at 330.

Finally, Wellpath has not shown – nor is the Court aware – of any other circumstances that would make an award of expenses unjust, such as the inability to pay. *See Black v. Friedrichsen*, No. 119CV00307TLSSLC, 2022 WL 951365, at *5 (N.D.Ind. Mar. 30, 2022) (noting that "some courts have found that an award of fees may be unjust when the losing party establishes an inability to pay.").

For these reasons, the Court concludes that an award of reasonable attorney's fees is appropriate under Rule 37 and turns now to the appropriate amount of those fees.

**B.      The Court will award plaintiff a portion of her claimed lodestar calculation of attorney's fees incurred in litigating the fifteenth motion to compel.**

It is well settled that "[d]istrict courts have wide discretion in determining the appropriate amount of attorney's fees," and that the "party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Furthermore, a determination of fees "should not result in a second major litigation." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 654 (7th Cir. 2011), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As plaintiff correctly notes, the starting point for a court's evaluation of a fee request "is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate." *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2022 WL 4551893, at *3-4 (N.D.Ill. Sept. 29, 2022); *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016), *quoting Divane v. Krull Elec. Co.*, 319 F.3d 307, 317-18 (7th Cir. 2003). Although the lodestar yields a "presumptively reasonable fee," *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018), after the lodestar calculation, the court "may determine whether an adjustment is

warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021).

Plaintiff has submitted billing records and supporting affidavits reflecting a lodestar calculation of $26,415.00 in attorney's fees incurred in litigating the fifteenth motion to compel. Specifically, plaintiff seeks to recover the following fees for the work of her two attorneys:

| Attorney | Year of Admission | Hourly Rate | Number of Hours | Total |
|---|---|---|---|---|
| Torreya L. Hamilton | 1995 | $525 | 27.4 | $14,385.00 |
| Kathleen A. Hennessy | 2016 | $300 | 40.1 | $12,030.00 |
| | | **TOTAL:** | | $26,415.00 |

For the reasons that follow, plaintiff's request for fees is granted in large part.

### 1. Plaintiff counsel's claimed hourly rates are reasonable.

In the context of a fee petition, a reasonable hourly rate is "one that is 'derived from the market rate for the services rendered.'" *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *3 (N.D.Ill. May 21, 2018), *quoting Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011); *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) ("A reasonable hourly rate is based on the local market rate for the attorney's services."). In particular,

> the best evidence of the market rate is the amount the attorney actually bills for similar work. However, if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Montanez*, 755 F.3d at 553. The party seeking fees bears the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Spegon*, 175 F.3d at 555, *quoting Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Here, both Hamilton and Hennessey have submitted their own affidavits and the affidavits of other attorneys to meet their burden to support their claimed hourly rates of $525 and $300, respectively.  With respect to Hamilton (with over 28 years of primarily civil rights-related litigation experience), her rate of $525 is in line with both the hourly rates courts have recently awarded her in similar cases and with rates awarded to similarly experienced attorneys in the community.  *See, e.g., Lambert v. City of Chicago*, 19 L 2276 (March 8, 2022 Order) (Hamilton awarded $505); *Wilbon v. Plovanich*, 12 CV 1132, Dckt. #576 (N.D.Ill. Feb. 1, 2019) (Hamilton awarded $475 for work performed in 2017-18); *Bahena v. City of Chicago*, 17 CV 8532, Dckt. #189 (N.D.Ill. Feb. 15, 2023) (awarding Jeffrey Neslund, with 29 years of experience, awarded an hourly rate of $585); *Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *3 (N.D.Ill. 2018) (awarding Jon Loevy, with other 25 years of experience, an hourly rate of $550).

Similarly, the $300 rate of attorney Hennessy – who has seven years of civil rights-related litigation experience – is in line with the rates courts recently awarded her and other similarly experienced attorneys in the community.  *See, e.g., Brandy v. City of East Chicago*, et al., 2:22 CV 00070 (N.D.Ind.) (awarding Hennessey $300); *Boatman, et al. v. Muhammad, et al.*, 18 CV 4237, Dckt. #255 (N.D.Ill July 13, 2023) (awarding attorney Shamoyita M. DasGupta, with eight years of experience, an hourly rate of $325); *Fields*, 2018 WL 2018 WL 253716, at *3 (awarding two attorneys with about eight years of experience $325).

Wellpath does not object to the hourly rates claimed by plaintiff for attorneys Hamilton and Hennessy and the Court will award the requested rates because it finds that they are well-supported and reasonable.

### 2. With one exception, the claimed hours expended by plaintiff's counsel related to the fifteenth motion to compel are reasonable.

The party seeking a fee award must submit its billing records and "bears the burden of proving the reasonableness of the number of hours worked." *Herrera v. Grand Sports Arena*, LLC, No. 17-cv-0452, 2018 WL 651115, at *2 (N.D.Ill. Dec. 11, 2018) (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518 (7th Cir. 1993)); *Gonzalez v. Baker*, No. 2:20-cv01879-JCM-DJA, 2022 WL 2080089, at *3 (D.Nev. June 8, 2022). The moving party must also "exercis[e] billing judgment, which means they must 'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *2 (N.D.Ill. May 21, 2018), *quoting Hensley*, 461 U.S. at 437.

"What qualifies as a 'reasonable' use of a lawyer's time 'is a highly contextual and fact specific enterprise,' and the court has 'wide latitude' in awarding attorney's fees." *Melikhov*, 2018 WL 3190824, at *4, *quoting Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). Among other things, the Court must assess the attorneys' time entries and must exclude from the lodestar hours that are excessive, redundant, vague, inadequately documented or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *Montanez*, 755 F.3d at 553. The Court must also carefully "'scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.'" *Johansen v. Wexford Health Sources*, No. 15-CV-2376, 2021 WL 1103349, at *7 (N.D.Ill. Mar. 23, 2021), *quoting Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009).

Here, after exercising billing judgment, plaintiff seeks to recover fees for 67.5 hours of attorney work litigating the fifteenth motion to compel related to: (1) briefing the motion itself; (2) preparing and attending court hearings; (3) reviewing court orders; (4) reviewing Wellpath's related motions; (5) the preparation of court-ordered status reports regarding Wellpath's compliance; and (6) necessary communications relating to tasks (1-5). In response – without

proposing an alternative lodestar calculation – Wellpath objects to a number of plaintiff's billing entries, arguing that they lack specificity; are duplicative (in that plaintiff's attorneys seek compensation for working in tandem or collaborating on a task); and/or were not reasonably incurred in litigating the fifteenth motion to compel. Upon a thorough review of plaintiff's counsel's billing records, with one exception, the Court disagrees.

First, Wellpath's objections to entries related to plaintiff's counsel's inter-office conferences and the attendance of two attorneys at each status hearing are meritless. Not only has Wellpath failed to cite any authority for these objections – or any of its objections for that matter – but such objections are routinely rejected by courts. *See, e.g., N.Y. S. Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) ("[P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist."); *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-CV-1719 (SRN/SER), 2018 WL 617972, at *11 (D.Minn. Jan. 29, 2018) ("[T]he fact that multiple attorneys were involved in a discussion about the case does not, by itself, mean that the time spent was unreasonable or excessive.") (internal quotation and citation omitted); *Demauro v. Loren-Maltese*, No. 98 C 8318, 2007 WL 9821267, at *7 (N.D.Ill. Dec. 14, 2007) ("Time spent in consultation is not unnecessary duplication, but rather typically necessary in order to make appropriate litigation decisions.") (internal quotation and citation omitted). Having failed to otherwise "demonstrate something about the configuration of hours that indicates that excessive overlapping billing has occurred," *Demauro*, 2007 WL 9821267, at *7, Wellpath's objections to the duplicate entries for inter-office conferences and the attendance at court hearings are overruled.

Second, Wellpath takes issue with the amount of time plaintiff's attorneys spent in preparing for the in-person status hearings with the Court, implying – without elaboration – that it was excessive. The Court disagrees. As acknowledged by Wellpath itself, given the "complex nature of discovery in this case," this time was reasonably incurred in preparation for the status hearings on the fifteenth motion to compel, which covered sixteen categories of discovery documents. (Dckt. #373 at 5). Similarly, the hours senior attorney Hamilton spent reviewing and editing attorney Hennessy's initial draft of the fifteenth motion to compel were reasonably incurred and are compensable. *See, e.g., Sloan Valve Co. v. Zurn Industries, Inc.*, No. 10-cv-204, 2012 WL 3716961, at *3 (N.D.Ill. Aug. 27, 2012) (acknowledging, at least as a general matter, that "it is reasonable for senior partners to review associates' work").

Third, Wellpath takes issue with the purportedly "excessive" time plaintiff's attorneys spent preparing the various joint status reports requested by the Court. However, not only has Wellpath failed to specify the particular joint status report-related time entries to which it objects (there are many on each of the dates Wellpath lists), but based on the Court's review of the records, many of those entries are directly related to the issue of Wellpath's compliance with the fifteenth motion to compel. (*See e.g.* 368-1 at 15 (Hamilton's 9/1/2023 Entries (related to the joint status report regarding Wellpath's compliance)).

Finally, the Court will, however, strike the 1.1 hours billed by attorney Hamilton on May 12, 2023 for a "zoom meeting with KAH re: status of *City's* doc production relating to P.'s 15th MTC." (Dckt. #368-1) (emphasis added). While this entry presumably relates to this matter, to the extent that it includes reference (perhaps inadvertently) to "the City" – and not Wellpath – the Court will accept that it is improperly vague. *See Montanez,* 755 F.3d at 556 ("The district court has broad discretion to strike . . . vague or unjustified billing entries.").

15

For all of these reasons, the Court finds, on the whole, that the hours claimed by plaintiff's counsel were reasonably incurred in litigating the fifteenth motion to compel. Upon striking the 1.1 hour of attorney Hamilton's time, the resulting lodestar calculation is $25,837.50.

### 3. The Court will further reduce the lodestar by 10% to account for plaintiff's degree of success on the merits of the motion.

Finally, the Court finds it appropriate to further reduce the lodestar to account for plaintiff's partial success on the substantive merits of the fifteenth motion to compel. *See Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 736 (7th Cir. 1998) ("[D]istrict courts both can and should look to the degree of success a party achieves in deciding how generous a fee award should be."); *Sommerfield v. City of Chi.*, 863 F.3d 645, 651 (7th Cir. 2017) ("A reduction for limited success strikes us as entirely appropriate."). Indeed, as Wellpath correctly notes, and as described *supra* at Section I., the Court did not grant plaintiff's motion in its *entirety*. At a minimum, the Court denied the motion with respect to one disputed *Monell* request (Second RFP No. 3); further limited the temporal scope of certain *Monell* requests (*e.g.* RFP No. 5); and plaintiff herself withdrew one previously disputed *Monell* request (Second RFP No. 12). Thus, in its discretion, the Court finds that a further 10% reduction in plaintiff's lodestar is warranted to account for her partial success (albeit minimally "partial" so to speak). *See, e.g., Montanez*, 755 F.3d at 556 (affirming a 50% reduction in lodestar to reflect plaintiff's lack of success on the merits); *Spegon*, 175 F.3d at 558-59 (same).

In sum, after reducing plaintiff's lodestar ($25,837.50) by 10% to reflect her level of success on the merits, the Court awards plaintiff $23,253.75 in attorney's fees related to the fifteenth motion to compel.

## CONCLUSION

For the foregoing reasons, plaintiff's petition for attorney's fees, (Dckt. #368), is granted in part, and the Court awards plaintiff $23,253.75 in fees.

**DATE:  October 15, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**